**Norman L. FAUSETT,
Petitioner-Appellant,**

v.

**Virginia Louise FAUSETT, Respondent.**

**No. WD 33823.**

Missouri Court of Appeals,
Western District.

Oct. 18, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 29, 1983.

Application to Transfer Denied
Jan. 17, 1984.

John W. Dennis, Jr., Paden, Welch, Martin, Albano & Graeff, Independence, Mary Ann Thalman, Platte City, for petitioner-appellant.

Regina Keelan Bass, Thayer, Bernstein & Bass, Kansas City, for respondent.

Before SOMERVILLE, P.J., TURNAGE, C.J., and MANFORD, J.

SOMERVILLE, Presiding Judge.

The husband petitioned to dissolve a marriage of long standing. Incidental thereto he sought custody of an unemancipated, female child, disallowance of any maintenance to the wife, a setting apart to each spouse his or her separate property, and a division of marital property.

The wife filed an answer admitting that the marriage was irretrievably broken and cross-petitioned that the marriage be dissolved, that she be awarded maintenance, custody of the unemancipated, female child, child support, that the separate property of the respective spouses be set apart, and that a division of marital property be effected.

A lengthy trial spawned a transcript of approximately one thousand pages of testimony, three depositions containing one hundred and forty-seven pages of additional testimony, and the introduction of some forty-seven exhibits. The aforementioned ripened into a decree which dissolved the marriage, awarded maintenance ($700.00 per month), attorney fees and "suit money" ($14,454.35), child custody and child support ($600.00 per month) to the wife, set apart to the respective spouses their separate property, and divided the marital property (51.3% to the wife and 48.7% to the husband).

An appeal by the husband questions part but not all of the decretal provisions, to-wit: (1) the trial court erred in awarding maintenance to the wife because she was employable and her earnings coupled with income-producing marital property which she was awarded was sufficient to meet her needs; (2) alternatively, if the wife was entitled to any maintenance the amount awarded to her by the trial court was excessive; (3) the trial court erred in effecting a division of marital property which unjustly favored the

wife; and (4) the trial court erred in awarding attorney fees and "suit money" to the wife.

A chronological review of this marriage rent asunder offers some clues to the issues posed on appeal. The parties were married on August 12, 1955. The marriage was blessed with two children, a son who has attained majority and an unemancipated daughter. The husband was a commercial airline pilot drawing an annual salary of $98,643.39 subject to future fluctuation depending on the type of equipment flown. Aviation was the husband's avocation as well as his vocation. The parties resided on an 80-acre farm in Platte County which, among other improvements, contained a runway and hangar. The husband bought used and damaged airplanes, repaired and made them airworthy, and resold them. As the marriage began to disintegrate the husband, between flights for his employer, tended to withdraw to the hangar and spend more and more time in pursuit of his avocation. The husband's explanation for his reclusiveness was that the wife, much to his chagrin, was indifferent with regard to her appearance and personal hygiene.

The wife has a college degree, a lifetime teaching certificate, and real estate broker's license. During 1981, the year immediately preceding the decree of dissolution, the wife sold real estate on an intermittent basis and grossed approximately $3874.67 which, after expenses, netted her approximately $95.00 per month. Although the husband suffered from a "back problem" and was beset with "fading" eyesight, and the wife suffered from a mild heart condition medically described as a "mitral valve prolapse", both otherwise enjoyed "reasonably good health".

During the course of the marriage the parties acquired marital property which the trial court valued at $585,568.52. In addition, the trial court found that the wife was possessed of separate property valued at $115,304.96 (none of which was income-producing) and that the husband was possessed of separate property valued at $1535.00. The residential property consisting of eighty acres in Platte County, valued at $160,000.00, and an adjoining seventy-four acres, valued at $74,000.00, all of which was marital property, were ordered sold by the trial court with the net proceeds to be divided equally between the parties. The remainder of the marital property was divided by the trial court on the following basis: real and personal property to the wife valued at $183,449.66; and real and personal property to the husband valued at $168,118.86. Transposed into percentages, the wife was awarded approximately 51.3% of the total marital property and the husband was awarded approximately 48.7% of the total marital property.

According to the wife's testimony, she itemized and estimated her monthly expenses to be $2225.50. No amount for rent or purchase of a place to live was included therein. The trial court apparently assumed that the wife would invest her share of the proceeds received from the sale of the 80-acre residential property in Platte County, valued at $160,000.00, in a house or residence. It further appears that the trial court concluded that the wife would enjoy a monthly income of approximately $1525.50 from the sale of real estate and rentals and interest from property apportioned to her in the division of marital property which, when subtracted from her total estimated monthly expenses of $2225.50, left $700.00 per month, the amount of maintenance awarded the wife.

■ To a great extent, the issues raised on appeal pivot on conflicting testimony offered by the respective parties regarding the value of numerous items of marital property. Perforce, the scope of appellate review laid down in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and the attendant principle that the trial court's assessment of the credibility of witnesses is entitled to deference on appeal, *Minton v. Minton*, 639 S.W.2d 640, 643 (Mo.App.1982), take on an aura of controlling significance.

The husband attempts to substantiate his first point, error on the part of the trial court in awarding any maintenance to the wife, by arguing that income generated

from separate and marital property set over and awarded to the wife, coupled with her earning ability, was sufficient to meet her reasonable needs. Judicial determination of whether maintenance should be awarded, as well as the amount, if any, to be awarded, is statutorily circumscribed by § 452.-335, RSMo 1978. Whether maintenance should or should not be awarded is statutorily addressed, insofar as here pertinent, in the following terms in § 452.335.1(1)(2): "[T]he court may grant a maintenance order to either spouse, *but only* if it finds that the spouse seeking maintenance (1) [l]acks sufficient property, including marital property apportioned to him, to provide for his *reasonable needs;* and (2) [i]s unable to support himself through appropriate employment. . . ." (emphasis added)

Although the record in the instant case is awash with conflicting testimony, substantial evidence surfaces to support a finding by the trial court that the "reasonable needs" of the wife could not be met in full from a combination of income generated by separate and marital property and appropriate employment. The separate property set over to the wife was jointly owned with her father. He alone accumulated the property and according to the record her joint ownership therein was for estate purposes. The wife's father received all the income generated therefrom. Substantial evidence was adduced from which the trial court could find that the marital property apportioned to the wife generated a net income of approximately $1425.00 per month. Moreover, the wife, at best, had attained only minimal financial success in the real estate field (netting approximately $95.00 per month the year preceding the decree of dissolution). Conjunctively, her "reasonable needs" exceeded the combined amounts just mentioned. Under § 452.335, supra, as judicially construed, the wife was not obliged to consume her apportioned share of marital property in order to be entitled to an award of maintenance. *P.A.A. v. S.T.A.,* 592 S.W.2d 502, 504 (Mo. App.1979); *In re Marriage of Schulte,* 546 S.W.2d 41, 49 (Mo.App.1977); and *In re Marriage of Powers,* 527 S.W.2d 949, 955

(Mo.App.1975). Under the reigning authority of *Murphy v. Carron,* supra, applied in light of § 452.335, supra, as judicially construed, it cannot be said that the trial court erred in awarding maintenance to the wife.

The husband's second point, in the alternative, that if the wife was entitled to maintenance the amount awarded was excessive, is not so easily reconciled. Virtually every component item comprising the total monthly expenses testified to by the wife comes under attack by the husband. A majority of the component items questioned by the husband are rendered free of error when reviewed in accordance with *Murphy v. Carron,* supra. Two in particular, however, fail to fit this mold. One component item of monthly expense making up the total of $2,225.50 was the sum of $200.00 characterized as monthly "savings". Another component item of monthly expense in the sum of $200.00 was characterized as "depreciation" on a 1979 Oldsmobile received by the wife in the division of marital property. Justification for inclusion of the component items just mentioned in arriving at the amount of maintenance awarded the wife presents issues heretofore unencountered in this state. Neither of the parties has cited any authority, pro or con, on these admittedly unique issues, nor has this court's independent research uncovered any pertinent authority offering guidance. Such being the case, this court is relegated to the fundamental task of ascertaining the intent of the legislature in enacting § 452.-335.2(1)–(7), supra. The threshold question is the connotation of "maintenance" in the context of the Dissolution of Marriage Act. Resort is first had to the literal meaning of the term "maintenance". The term, when used as a noun, is variously defined in Webster's Third New International Dictionary as "the act of providing means of support for someone" and "the provisions, supplies, or funds needed to live on; means of sustenance." "Maintenance" is defined as follows in Black's Law Dictionary (5th ed. 1978): "Sustenance; support; assistance; aid. The furnishing by one person to another, for his support, of the means of liv-

ing, or food, clothing, shelter, etc., particularly where the legal relation of the parties is such that one is bound to support the other, as between father and child, or husband and wife."

Advent of the Dissolution of Marriage Act vastly changed ingrained conceptual theories previously pervading the marital relationship. "Marriage is now regarded as a partnership of equals". *In re Marriage of Neubern,* 535 S.W.2d 499, 503 (Mo.App. 1976). "Under the Missouri statute and the Uniform Marriage and Divorce Act upon which it is based, the division of property is emphasized as 'the primary means of providing for the future financial needs of the spouses'." *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo.App.1977).

 Under the Dissolution of Marriage Act, the ultimate goal of a decree of dissolution is to place each of the former spouses in an independent, self-sufficient status. Creating a future estate or preserving marital property intact from the ravages of use and time under the guise of maintenance are at war with both the literal meaning of "maintenance" and the conceptual theories undergirding the Dissolution of Marriage Act. Inclusion of the sum of $200.00 for "savings" and the sum of $200.00 for "depreciation" on the 1979 Oldsmobile [1] in arriving at the total amount awarded for maintenance were posited on erroneous applications of law and cannot stand. Hence, maintenance awarded the wife in the sum of $700.00 per month should be reduced to $300.00 per month.

The husband's third point, an unjust division of marital property favoring the wife, focuses on a broad spectrum of factual complaints, most of which fall by the wayside when juxtaposed with § 452.330.1, RSMo Supp.1982, and reviewed under the precept of *Murphy v. Carron,* supra. One aspect, however, broaches a question of law which merits discussion. One item of marital property apportioned to the wife consisted of an unimproved forty-acre tract of land in Polk County adjoining a larger tract of land owned jointly by the wife and her father. The forty-acre tract of land in question was described as "landlocked", that is there was no means of ingress or egress absent crossing one of several adjoining tracts of land (including the tract owned jointly by the wife and her father). The trial court valued the forty-acre tract in question at $8500.00. A professional appraiser testified on behalf of the wife that the forty-acre tract had a fair market value of $8500.00 if landlocked and a fair market value of $23,500.00 if not landlocked. A professional appraiser called by the husband testified that the forty-acre tract had a fair market value of $18,000.00 if landlocked and a fair market value of $22,000.00 if not landlocked. The husband vigorously contends that the forty-acre tract, as a matter of law, was not landlocked and should have been valued on a different basis. Concomitantly, failure of the trial court to do so resulted in an unjust division of marital property favoring the wife. The course of the husband's argument, if correctly perceived, runs as follows. The forty-acre tract was not landlocked for purposes of resale by the wife since she and her father jointly owned one of the adjoining tracts of land, thereby making it possible for a prospective purchaser to obtain an easement of necessity. In the context presented, the forty-acre tract would constitute the dominant estate and the adjoining tract jointly owned by the wife and her father would constitute the servient estate.

 The wife, without advancing any rationale or citing any authority, summarily contends the forty-acre tract was landlocked. This court can only speculate that she does so on the theory that joint ownership of the adjacent tract with her father precluded any unity of possession between the dominant and servient estates, a legal ingredient for acquisition of an easement of necessity by a prospective purchaser of the forty-acre tract. Although no case in point has been found in Missouri, *Bushart v. West,* 215 Kan. 205, 523 P.2d 391, 395

---

1. The sum of $200.00 for "depreciation" on the 1979 Oldsmobile was in addition to an amount included for "auto insurance" and "car expense."

(1974), and *Garvin v. State,* 116 Misc. 408, 190 N.Y.S. 143, 147–48 (Ct.Cl.1921), appear to support such a theory. On the other hand, the husband has likewise failed to cite any authority or advance any reasons for his contention that the forty-acre tract was not landlocked. Suffice it to say § 228.340, RSMo 1978 in and of itself, provides a statutory remedy by which a prospective purchaser of the forty-acre tract could obtain a means of ingress and egress. This being the case, the forty-acre tract, as a matter of law, was not landlocked in the sense contemplated by the trial court and its fair market value, according to the professional appraiser called on behalf of the wife, was $23,500.00. The trial court obviously believed the testimony of the wife's appraiser was more credible since the latter valued the forty-acre tract, if landlocked, at $8500.00, a figure considerably lower than the value placed on it by the husband's appraiser if landlocked.

The value placed upon the forty-acre tract by the trial court reflects an erroneous application of law, i.e. that the forty-acre tract apportioned to the wife was landlocked. The record supports a finding that the forty-acre tract apportioned to the wife had a fair market value of $23,500.00. The consequence is a division of marital property to the wife valued at $198,449.66 and division of marital property to the husband valued at $168,118.66. Transposed into percentages, the wife, as a matter of fact, received 52.5% of the marital property and the husband received 47.5% of the marital property. The forty-acre tract awarded to the wife should be revalued by the trial court at $23,500.00 and the division of marital property should be appropriately readjusted to reflect, insofar as practical, approximately the same percentage division of marital property, to-wit: 51.3% to the wife and 48.7% to the husband, which the trial court, in terms of percentages, initially concluded represented a "fair" division of marital property in accordance with the criteria set forth in § 452.330.1, supra.

■ The husband argues that the division of marital property unjustly favored the wife by failing to properly weight the wife's "conduct" during the marriage. He generalizes that the wife's conduct during the marriage accounted for its breakdown. Admittedly, the "conduct" of the parties during the marriage is one of several relevant factors to be considered in apportioning marital property. Section 452.330.1(4), supra. Marital misconduct, however, is a viable factor only when an "errant spouse's misconduct places extra burdens on the non-errant spouse in the partnership endeavor." *Fields v. Fields,* 643 S.W.2d 611, 616 (Mo.App.1982). There is not a scintilla of evidence that the vague accusations leveled by the husband against the wife's conduct placed any extra burden on the partnership endeavor.

■ The husband's fourth and final point, error on the part of the trial court in granting the wife $14,454.35 for attorney fees and "suit money", is ruled against him under authority of *Kieffer v. Kieffer,* 590 S.W.2d 915 (Mo. banc 1979). The court in *Kieffer,* in construing § 452.355, RSMo 1978, held as follows: "Neither the statute nor the Commissioners' notes require that one party must be unable to pay the cost of litigation. Rather, by using the words they did, the Commissioners and the Missouri legislature allowed the trial judge considerable discretion in awarding attorneys' fees.... However, § 452.355 does make clear that the financial resources of the parties must be considered. Other facts are to be taken into account as well. How they balance will vary from case to case and certainty of result cannot be projected. Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard should its award (or orders) be overturned." Id. at 918–19. When superimposed on the facts of this case it cannot be said that the trial court abused its discretion in view of the relative earning capacities of the parties.

The decree of the trial court is affirmed in part, reversed in part, and remanded to the trial court with directions to amend the decretal provisions touching maintenance

and the division of marital property consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

All concur.