In re the MARRIAGE OF Merle Lynn BLUNDON and John Kennedy Blundon.

Merle Lynn BLUNDON, Respondent,

v.

John Kennedy BLUNDON, Appellant.

No. 16975.

Missouri Court of Appeals, Southern District, Division One.

Jan. 16, 1991.

---

John S. Pratt, Pratt and Fossard, Springfield, for appellant.

Robert S. Wiley, Crane, for respondent.

CROW, Judge.

John Kennedy Blundon ("John") appeals from a decree dissolving his 34-year marriage to Merle Lynn Blundon ("Merle"). He maintains the trial court erred in (1) awarding Merle 43 percent of his civil service retirement benefits, and (2) denying his motion to reopen the case for additional evidence.

John, age 60 at time of trial,[1] and Merle, age 52 at time of trial, married December 17, 1955. John was then in the United States Air Force, having entered in May, 1950.

John stayed in the Air Force until 1959, when he became a United States civil service employee. He remained so employed until retirement May 31, 1983.

John and Merle began occupying separate bedrooms in November, 1986. Merle departed the marital home in Kimberling City August 31, 1987.

The trial court found Merle received an inheritance of $31,522.37 from her mother in October, 1987. Merle used some of it to purchase an automobile in February, 1988.

The trial court found about $24,500 of the inheritance remained at time of trial and the automobile was worth $7,250. The decree awarded Merle the $24,500 and the automobile as her separate property. The decree also set apart to Merle as her separate property various gifts received by her during the marriage. The trial court valued those items, in the aggregate, at $2,490.

At time of trial John was residing in the marital home. He testified he had been unemployed since retiring from civil service. His only income, so he said, was a "net" of $1,697.04 each month from his civil service retirement and about $280 per month interest from a money market account. His "taxable income" in 1987 was $25,300.

John described his health as "[f]airly poor," adding he takes 13 prescription drugs daily. He was hospitalized one day for "kidneys" in November, 1987, nine days for carotid artery surgery in December, 1987, and three days for a hydrocele removal procedure in June, 1988. Only two-thirds of those expenses were covered by his medical insurance, leaving $7,400 for him to pay. He has high blood pressure and, at time of trial, was anticipating prostate surgery, laser surgery on his eyes, and possibly another carotid artery surgical procedure.

Merle was residing in a one-room furnished "efficiency" apartment in O'Fallon at time of trial. She was employed 40 hours per week in the accounts payable section at "Venture Stores," her "take-home" pay being approximately $381 every two weeks. She was also employed part time three or four nights a week, but avowed she could not continue that employment because she planned to begin night school and obtain a degree (an eight-year project). She described her health as good and explained she would soon become eligible for medical and dental insurance through Venture. Upon completing a year's employment there she will qualify for a "profit sharing" retirement plan.

---

1. Trial occurred November 23, 1988.

The trial court found the parties' home in Kimberling City was marital property with a fair market value of $90,000. It was subject to a deed of trust securing a note with a principal balance of $65,000, leaving "equity" of $25,000. The trial court awarded the home to John and ordered him to pay the note.

The trial court also awarded John, as marital property: (1) a van with a fair market value of $9,000, subject to a $5,200 lien, (2) a money market account of $54,700, (3) a checking account of $2,000, (4) cash on hand of $120, and (5) household goods and furnishings valued at $8,200.

The trial court awarded Merle, as marital property, a checking account of $200 and household goods and furnishings valued at $3,075.

John testified, and the trial court found, that John's "gross benefits" from his civil service retirement amounted to $2,041 per month at time of trial. The trial court ruled 83 percent of those benefits constituted marital property in that the parties were married 27½ of the 33 years during which the benefits accrued. The decree apportioned the retirement benefits 43 percent to Merle and 57 percent to John.

The trial court awarded neither party maintenance, except that John was ordered to pay Merle "temporary maintenance" of $500 per month until she began receiving her share of the civil service retirement. The trial court ordered John to pay Merle $2,000 toward her attorney's fee. Additionally, "to more closely equalize the division of marital property" and to reimburse Merle for her share of the proceeds from the sale of a marital residence in Florrisant in 1985, the trial court ordered John to pay Merle $20,000.

Neither side disputes the values assigned the various items of property by the trial court. Using those values we see that excluding the civil service retirement, the net worth of the marital property awarded John is, in the aggregate, $93,820. The net worth of the marital property awarded Merle, excluding the civil service retirement, amounts to $3,275. This is apart from the $34,240 in separate property set aside to her.

Deducting the $20,000 lump sum payment from John's side of the marital property ledger and adding it to Merle's side—again disregarding the civil service retirement—John ends up with $73,820 (76 percent of the marital property) and Merle with $23,275 (24 percent of the marital property).

Although Merle was awarded only 43 percent of the civil service retirement, that actually amounts to almost 52 percent of the portion of that asset which constitutes marital property. It will be recalled that 83 percent of the civil service retirement is marital property. If our calculations are correct, Merle's 43 percent of the entire benefit constitutes 51.8 percent of that 83 percent. John therefore receives the 17 percent of the benefit that is not marital property, and 48.2 percent of the 83 percent that is martial property.

John concedes the division of marital property is within the sound discretion of the trial court and its decision should be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64[3] (Mo. banc 1983). In the instant case, says John, there was an abuse of discretion in that the evidence established he is in poor health and unable to maintain himself independently while paying Merle 43 percent of his retirement benefits. Furthermore, argues John, there was substantial evidence showing Merle is in good health, is working and attending college, and needs no more than $500 per month from him.

■ In considering those contentions we bear in mind that the 43 percent of the civil service retirement awarded Merle is not maintenance, but instead a division of marital property. John acknowledges the applicable statute is § 452.330.1, RSMo Supp. 1988, which sets forth the factors to be considered in dividing marital property. Factor "(5)" of that subsection—custodial arrangements for minor children—is inapplicable, as the two children born of the marriage were emancipated long before the separation.

Considering the other factors required by § 452.330.1 we cannot convict the trial court of error. Although the portion of the civil service retirement constituting marital property was divided 51.8 percent to Merle and 48.2 percent to John, it is obvious that in the overall division of marital property John received a much greater share than Merle.

John cites *Fausett v. Fausett*, 661 S.W.2d 614, 618[4] (Mo.App.1983), for the proposition that the ultimate goal of a decree of dissolution is to place each of the former spouses in an independent, self-sufficient status. That statement, however, must be read in light of the result in *Fausett*. There the husband complained on appeal that the trial court unjustly divided the marital property by awarding the wife 51.3 percent and him 48.7 percent. The Western District of this Court approved that percentage. *Id.* at 619. Furthermore, unlike the instant case, the wife in *Fausett* received monthly maintenance. *Fausett* does not demonstrate error in the trial court's division of marital property in the instant case.

John cites *In re Marriage of Harrison*, 657 S.W.2d 366, 371[11] (Mo.App.1983), for the proposition that the law requires provision for a potentially disabled spouse by award of marital property if that is practicable. There, however, the wife had suffered severe injuries in a highway accident, was "legally" blind, was receiving disability benefits under Social Security, and was custodian of two minor children. The husband, age 34, was in robust health with the majority of his productive years still ahead. In the instant case John's physical problems are nowhere as severe as the wife's in *Harrison*, and the majority of Merle's economically productive years are behind her. *Harrison* does not warrant our interference in the division of marital property in the instant case.

We have not overlooked the value of the nonmarital property set apart to Merle ($34,240), a factor to be considered per § 452.330.1(3). Adding that to the marital property awarded her (including the $20,000 lump sum payment but excluding her 43 percent of the civil service retirement) produces a total of $57,515. John, after paying Merle the $20,000 lump sum payment, comes away with $73,820 (excluding his 57 percent of the civil service retirement).

John does not dispute Merle's contribution as a homemaker during the marriage (§ 452.330.1(2)), nor does he accuse her of misconduct (§ 452.330.1(4)). His sole complaint is that awarding her 43 percent of the civil service retirement benefits will prevent him from maintaining himself in an independent fashion, whereas she does not need that much to maintain herself independently.

The trial court obviously took John's physical condition into account, as it awarded him a far greater share of the marital property than Merle and there is nothing in the record except John's ailments to justify awarding him as much as he got. The trial court was not obliged to believe John would be unable to maintain himself independently if Merle were awarded 43 percent of the civil service retirement benefits. In this judge-tried case credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

An appellate court will disturb a trial court's division of marital property only if it is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869[5] (Mo. banc 1984). It was John's burden as appellant to demonstrate error. *Pearson v. Pearson*, 687 S.W.2d 677, 679[1] (Mo.App.1985); *Suesserman v. Suesserman*, 539 S.W.2d 741, 742–43[3] (Mo.App.1976). He has failed to demonstrate the division of marital property is so heavily and unduly weighted in favor of Merle as to constitute an abuse of discretion. His first point is denied.

■ Consideration of his second point requires the following chronology.

As noted earlier,[2] the case was tried November 23, 1988. The trial court granted the parties until December 23, 1988, to submit written suggestions.

On March 16, 1990, almost 16 months after trial, the trial court entered a decree of dissolution of marriage.

John filed a timely motion to amend the decree or, in the alternative, for a new trial. He simultaneously filed a motion to reopen the case to present evidence regarding occurrences since trial.

On May 1, 1990, the trial court granted John's motion to amend the decree in part. The trial court denied John's requests for a new trial and to reopen the case.

The trial court filed an amended decree May 17, 1990. This appeal followed.

John's second point avers the trial court erred in denying his motion to reopen the case in that the court did not have before it substantial evidence regarding the economic circumstances of the parties at the time the division of property was to become effective as required by § 452.330.1(1). The point asserts that between trial and entry of the original decree John's health deteriorated and he expended funds for medical bills, while Merle's circumstances may have improved.

At the hearing on John's motion to reopen the evidence he offered to prove he was hospitalized for open heart surgery April 11–18, 1989, with expenses of $3,401 that were not covered by insurance. A physician's report dated March 2, 1990, attached to the motion, stated John's "treadmill" showed circulation abnormalities. John made no offer of proof regarding any change in Merle's economic circumstances.

The delay between trial and entry of the original decree is deplorable. Delays of similar length have been condemned by the Supreme Court of Missouri. *Matter of Steinle,* 653 S.W.2d 201 (Mo. banc 1983). However, that does not mean the trial court erred in denying John's motion to reopen.

A trial court's decision on whether to allow a party to present further evidence after the evidence is closed is a matter of discretion, and a trial court will be reversed only upon a showing of abuse of that discretion. *In the Interest of S— G. G—,* 779 S.W.2d 45, 54[10] (Mo.App.1989); *Matter of Estate of Viviano,* 624 S.W.2d 130, 133[7] (Mo.App.1981).

Merle points out that John's physical problems and potential need for additional heart surgery were fully developed at trial, hence the evidence tendered by John on his motion to reopen showed nothing the trial court did not already know. We agree. There is no indication the evidence John sought to present May 1, 1990, would have shown that his economic circumstances, or those of Merle, were materially different than they were at time of trial. Consequently, we cannot say the trial court abused its discretion in denying John's motion to reopen.

John's second point is denied and the decree is affirmed.

MAUS, P.J., and PREWITT, J., concur.