

# Missouri Court of Appeals

## Southern District

### Division One

In Re the Marriage of:
DANA LEA WASSON
and JEREMY SHANE WASSON.

DANA LEA WASSON,

        Petitioner/Appellant,

vs.

JEREMY SHANE WASSON,

        Respondent/Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD37034

Filed: May 4, 2022

## APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

### Honorable Mark A. Stephens, Judge

__AFFIRMED__

Dana Lea Wasson ("Mother"), appeals the trial court's "Judgment of Dissolution of Marriage" in four points relied on. She argues that the trial court "erred . . . in erroneously declaring and applying the law and abusing its discretion"[1] in: (1) denying Mother's motion to reopen the case for new evidence; (2) failing to make specific findings of abuse as required by

---

[1] Abuse of discretion, erroneously declaring the law, and erroneously applying the law are "distinct claims[,]" and "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." __Ivie v. Smith__, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014).

section 452.375;[2] (3) awarding Jeremy Shane Wasson ("Father") attorney fees in the amount of $50,000; and (4) allocating the entire actual damages award portion of a "deficiency judgment" debt on the marital home to Mother. Finding no merit to any of Mother's points, we affirm the trial court's judgment.

## Factual and Procedural Background[3]

Viewed in the light most favorable to the judgment, *Walker v. Lonsinger*, 461 S.W.3d 871, 874 (Mo.App. W.D. 2015), the following facts were adduced at trial.[4]

The parties were married on May 31, 2014, and had two children.[5] Father worked as a self-employed contractor and is able to earn a gross monthly income of $5,000.

Mother lived with her parents her entire life except for when she lived with Father. After separating from Father, Mother moved back in with her parents. Mother graduated from a private Christian school in 2004 then attended some post-secondary training in "aesthetics." She has a license to work in skincare services, and previously worked at a spa during the marriage making $30 an hour. Mother quit working when the parties' first child was born and was not "working outside the home" prior to the separation. After the separation, Mother worked three days a week

---

[2] All references to statutes are to RSMo 2016, unless otherwise indicated. All rule references are to Missouri Court Rules (2014).

[3] Mother's brief fails to conform to Rule 84.04(c)'s requirement that "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." *See Ordinola v. University Physician Associates*, 625 S.W.3d 445, 453 n.16 (Mo. banc 2021) ("[A] brief does not substantially comply with Rule 84.04(c) when it highlights facts that favor the appellant and omits facts supporting the judgment[.] . . ." "[A]side from violating Rule 84.04(c), failure to acknowledge adverse evidence is simply not good appellate advocacy and is often viewed as an admission that if the Court was familiar with all the facts, the appellant would surely lose."). (internal quotations and citation omitted).

[4] Over the course of the divorce proceedings, there were at least five different judges assigned to this case. For ease of reference, we collectively refer to all as the "trial court."

[5] Because the initials of the two children are the same, for clarity, we refer to the children as Child-1 and Child-2.

2

at the Trinity Christian Academy[6] daycare and made $1,080 per month. Child-1 attended daycare there on the days Mother worked.

In addition, Mother has received $10,000 to $15,000 a year (for approximately 18 years) from another business owned by her parents, along with health insurance benefits for her and the children. Mother receives these benefits "just for being their daughter," but also "because she does help with the business from time to time."

Mother's parents pay her bills, although she occasionally shops and purchases food for the children using her own money. Mother does not pay rent, utilities or insurance. She owns her car with her mother, and her parents insure it. Mother disclosed for the first time at trial (August 5, 2020), that she had over $107,000 in a savings account in her name and had been saving to buy a house.

The parties separated for a few days in 2015, after which Father was invited, by Mother's grandfather, to a Father's Day celebration at grandfather's home. Father attended and was assaulted by Mother's father. Father and Mother thereafter reconciled and attempted marriage counseling—Mother quit attending after three sessions.

On May 6, 2016, Mother left the marital residence with Child-1, and moved in with her parents. Father continued living in the marital residence for approximately a year and a half. Father paid the insurance and taxes, and maintained the property. After Mother left the marital home, Mother's parents began demanding that Father pay back the money they had advanced to purchase the home.

On May 17, 2016, Mother filed a "Petition for Dissolution of Marriage," wherein she stated that she was not pregnant. Shortly thereafter, Mother learned she was pregnant but did not tell

_____

[6] A Christian school that Mother's parents help financially support; "control," including a seat on the board of directors and the signing of employee paychecks; and where at least three of Mother's relatives currently worked.

Father. On July 6, 2016, Father filed a counter-petition, also asserting Mother was not pregnant. On or before July 19, 2016, Father learned from a third party that Mother was in fact pregnant and confronted Mother with the information. Mother confirmed that she was pregnant and amended her petition to reflect her physical status.

Mother delivered Child-2 eight months later at a birthing center. Mother did not list Father on Child 2's birth certificate, and gave Child-2 Mother's maiden name. Later, DNA testing was obtained and confirmed Father was Child-2's biological father. Child-2 was thereafter enrolled in the daycare at Trinity Christian Academy.

The trial court ordered supervised visits for Father with both children beginning April 21, 2017, although supervised visits had already commenced by agreement of the parties on November 5, 2016 between Father and Child-1. Father had to provide a parenting coach or assistant, at his own expense, to supervise the visitations. Father's supervised visitation was each Friday from 3:00 p.m. to 5:00 p.m., and each Saturday from 9:30 a.m. to 11:30 a.m. Father did not have any contact with Child-2 until that child was a year old.

On April 25, 2017, Father and Mother underwent court-ordered psychological evaluations. In addition, Father was ordered—at either Mother's request or that of the guardian ad litem ("GAL")—to undergo a follow-up psychological evaluation, a neuropsychological examination, a brain MRI, and 4 drug and/or alcohol tests. Father complied and did everything he was asked or ordered to do.

On June 5, 2017, Mother filed a motion to terminate Father's supervised visitation until Father obtained parenting training and therapy. After hearing argument, the trial court denied Mother's motion. Father did complete parenting classes and training.

On January 3, 2018, the trial court ordered, in part, more supervised visitation for Father with the children and Father was ordered to provide a parenting coach or assistant at his expense. Father was ordered to pay $100 a month in child support and was ordered not to post any photos of the children on social media. The parties were also ordered to communicate only through a program called "talking parents" unless there was an emergency. Except for the fact that Father paid the expenses for supervised visits, and occasionally paid the required $100 child support payments, neither Mother nor Father complied with the remainder of the trial court's order.

On January 31, 2018, the trial court entered a "Judgment of Dissolution of Marriage." The judgment directed that although the marriage of the parties was dissolved, "issues related to child support and custody, distribution of assets and debts and maintenance, attorney fees and all other matters not adjudicated herein are taken under advisement and such issues are to be set for a one day trial at a later date."

### Marital Home

In October 2015, Mother found and purchased a house through an online auction. Mother's parents provided the funds to complete the online purchase. The house was titled in the names of Father and Mother, and they owned the house "free and clear." No promissory note or deed of trust was executed in favor of Mother's parents to secure any interest in the home. No payments were made by Father or Mother to Mother's parents for the home, and Mother's parents made no demands for payment while Mother and Father both resided there.

On December 9, 2016, Mother's parents filed a four-count petition against the parties as to the marital home for fraud, unjust enrichment, action for imposition of constructive trust, and breach of contract.

On October 12, 2017, Mother's parents obtained a judgment against Mother and Father in their lawsuit regarding the marital home. The court found Mother and Father jointly liable to Mother's parents in the amount of $199,389.52, and imposed an equitable lien on the marital home in that amount. The court also awarded punitive damages to Mother's parents against Father only in the amount of $20,000. The judgment in that case shows there was no payment plan on the marital home—as the trial court indicated, the record in that case demonstrates that "Mother never signed a quit claim deed and stayed in the case only to support her parent's claim against Father." Mother's parents executed on the equitable lien and sold the marital home. The proceeds were applied to the $199,389.52 judgment, but a partial satisfaction of judgment was never filed.

Mother's parents have never tried to collect any of the judgment from Mother and have continued to support her and to pay her $10,000 to $15,000 a year since the judgment was entered. However, Mother's parents attempted on several occasions to collect the judgment from Father while the dissolution was pending.

### *Trial/Post-Trial Proceedings*

Trial commenced on March 27, 2019—the trial court thereafter heard additional evidence on August 13 and 14, 2019, August 5, 2020, and September 30, 2020. A significant portion of Mother's evidence and witness testimony was directed at demonstrating that co-parenting the children with Father was impossible due to his alleged drinking and anger issues, and his refusal to cooperate with people in authority. Father's theory of the case was largely directed at demonstrating that Mother was controlled by her parents and would be unable to take care of the children on her own.

On August 16, 2019, after the third day of trial, (the fourth day of trial was not scheduled to resume until August 5, 2020), the trial court entered a temporary order granting the parties joint

legal and joint physical custody.  In addition to Father's prior court-ordered visitation, Father was to have the children every Wednesday night, and return them to the Trinity Christian Academy at 7:30 a.m. on Thursday for school because Child-1 began school early on Thursday mornings.  The information premising this order, which was provided by Mother, was not true, and caused multiple problems for the children, the parties, and the court.

Father subsequently disregarded the trial court's order to return the children by 7:30 a.m., on the basis that Mother misrepresented the time the children started school on Thursday.  At that time, Mother did not work on Thursdays and Fridays at Trinity Christian Academy and she told Father in text messages that she took those days off to spend time with the children.  Child-1 did not start kindergarten until August 2020.  Prior to that time, neither child had to be at the school on Thursday or Friday.  However, Mother testified at trial (contrary to her text messages), that she could not let the children go to school on Thursday and Friday after being with Father because they were not dressed for school, their hair was not done, they were sugared up and sick, covered in rashes, and were suffering from various other ailments, none of which were ever medically treated.  This misinformation provided by Mother resulted in the court suspending the children's contact with Father for thirty days.

At the conclusion of all the evidence, the trial court gave the parties until October 30, 2020, to address various post-trial matters at which time the case would be deemed submitted, unless Father filed a request to reopen the evidence regarding Mother's previously undisclosed asset, *i.e.*, her savings account with a balance of $107,000.

On September 30, 2020, Mother's counsel stated that the outstanding balance of the joint judgment was between $30,000 and $35,000, plus the $20,000.00 punitive damage award.  The

7

record was left open for Mother's counsel to provide an accurate balance on this debt, but nothing further was ever provided to the trial court.

On November 4, 2020, Mother filed a "Motion to Reopen Case for New Evidence," and the next day also filed a "Motion for Suspension of Parenting Time for Father." The trial court sustained the latter motion until a hearing could be held on November 12, 2020. After reviewing the motions, replies filed by Father, reviewing Father's criminal file, and hearing argument from both parties, the trial court denied both of Mother's motions, and reinstated Father's time with the children, pursuant to the previous order of August 13, 2020.

On February 1, 2021, the trial court entered its 41-page "Judgment of Dissolution of Marriage" and "Findings of Fact."[7] The trial court found that the only domestic abuse or domestic violence that occurred in a form contemplated by the applicable statutes regarding its effect on custody or visitation rights was the undisputed fact that Father was the victim of domestic violence perpetrated on him by Mother's father during the marriage.

The trial court ordered Mother to pay the balance of the judgment that was awarded to her parents against both Father and Mother on the marital home in the amount of $30,000, exclusive of interest. Father was ordered to pay the punitive damages award from the marital home case in the amount of $20,000, and interest in the amount of $5,400.

The trial court found that Mother had the greater ability to pay attorney fees and costs in this case, and that the length, cost, and litigious nature of the proceedings were primarily caused by Mother, including motions filed by Mother and the GAL to reopen the evidence and suspend Father's temporary visitation. As such, the trial court ordered Mother to pay Father's reasonable attorney fees of $50,000.

---

[7] We commend the trial court on its efforts in this case, and for its extensive and well-reasoned findings.

On March 2, 2021, Mother filed a "Motion for New Trial/Motion to Vacate and Set Aside Decree/Motion to Amend/Motion to Reopen/Motion to Stay." The trial court denied the motion on March 4, 2021. This appeal followed.

In four points relied on,[8] Mother argues:

I.

THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY ERRONEOUSLY DECLARING AND APPLYING THE LAW AND ABUSING ITS DISCRETION IN DENYING MOTHER'S MOTION TO REOPEN CASE FOR NEW EVIDENCE BECAUSE REOPENING THE CASE WOULD NOT HAVE BEEN INCONVENIENT FOR THE TRIAL COURT OR GIVEN MOTHER AN UNFAIR ADVANTAGE AND COULD HAVE BEEN OUTCOME DETERMINATIVE IN THAT THE PROPOSED EVIDENCE OF INTENTIONAL ROAD RAGE BY FATHER CAUSING PERSONAL INJURIES AND PROPERTY DAMAGE WOULD HAVE BEEN RELEVANT IN A CHILD CUSTODY DETERMINATION AS EVIDENCE OF THE BEHAVIOR OF FATHER, WAS NEW EVIDENCE AND NOT CUMULATIVE, WAS BROUGHT TO THE ATTENTION OF THE TRIAL COURT AS SOON AS LEARNED BY MOTHER AND A DECISION HAD NOT YET BEEN RENDERED BY THE TRIAL COURT.

II.

THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY ERRONEOUSLY DECLARING AND APPLYING THE LAW IN FAILING TO

---

[8] None of Mother's four points relied on comply with the mandatory requirements of Rule 84.04, which "plainly sets forth the required contents of briefs filed in all appellate courts." *Lexow v. Boeing Co.*, ---S.W.3d---, 2022 WL 791953, at *2 (Mo. banc Mar. 15, 2022). Rule 84.04(d) states:

> (1) Where the appellate court reviews the decision of a trial court, each point shall:
>    (A) Identify the trial court ruling or action that the appellant challenges;
>    (B) State concisely the legal reasons for the appellant's claim of reversible error; and
>    (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

These requirements are "straightforward and mandatory[.]" *All Star Awards & Ad Specialties, Inc. v. HALO Branded Solutions, Inc.*, ---S.W.3d---, 2022 WL 1019012, at *7 (Mo. banc Apr. 5, 2022). "[A]llegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Rule 84.13. "[T]his Court's preference to reach the merits of a case when presented with a deficient brief must be balanced with the implication of such consideration." *Lexow*, 2022 WL 791953, at *2. "While this Court possesses the discretion to review non-compliant briefing, it must cautiously exercise this discretion else it sends an implicit message that substandard briefing is acceptable." *All Star Awards*, 2022 WL 1019012, at *7 (internal quotation and citation omitted).

MAKE THE SPECIFIC FINDINGS OF ABUSE REQUIRED BY SECTION 452.375 RSMO (2016) BECAUSE THE TRIAL COURT WAS REQUIRED UNDER THAT STATUTORY PROVISION TO MAKE SPECIFIC FINDINGS OF FACT WITH A DISCUSSION OF THOSE FACTS IN THAT THE TRIAL COURT FOUND THAT FATHER HAD ENGAGED IN THE VERBAL DOMESTIC ABUSE OF MOTHER.

III.

THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER IN ERRONEOUSLY DECLARING AND APPLYING THE LAW AND ABUSING ITS DISCRETION IN AWARDING FATHER AN ATTORNEY FEE OF $50,000 FROM MOTHER BECAUSE A CONSIDERATION OF ALL RELEVANT FACTORS AS REQUIRED BY SECTION 452.355 RSMO (2016) DID NOT JUSTIFY SUCH AN ATTORNEY FEE IN THAT THE LENGTH AND LITIGIOUS NATURE OF THE PROCEEDING WAS NOT PRIMARILY CAUSED BY MOTHER, THE MOTION TO REOPEN CASE FOR NEW EVIDENCE FILED BY MOTHER WAS NOT A GROSS OVERREACTION BASED ON SECOND HAND MARGINAL INFORMATION, THERE WERE NO BILLINGS OR TIME RECORDS TO ESTABLISH SUCH A FEE AND MOTHER WAS NOT RESPONSIBLE FOR THE FILINGS AND ACTIONS OF THE GUARDIAN AD LITEM, A PARTY TO THE CASE.

IV.

THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER IN ERRONEOUSLY DECLARING AND APPLYING THE LAW AND ABUSING ITS DISCRETION IN ALLOCATING THE ENTIRE ACTUAL DAMAGES AWARD PORTION OF THE DEFICIENCY JUDGMENT DEBT TO MOTHER BECAUSE A CONSIDERATION OF ALL RELEVANT FACTORS AS REQUIRED BY SECTION 452.330 RSMO (2016) DID NOT JUSTIFY SUCH AN ALLOCATION IN THAT THE DEFICIENCY JUDGMENT DEBT RESULTED FROM FATHER LIVING IN THE MARITAL HOME FOR 2 YEARS WITHOUT PAYING ANYTHING TOWARDS THE DEBT ON WHICH THE DEFICIENCY JUDGMENT DEBT IS BASED.

**Standard of Review**

The judgment in a court-tried civil case will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Only errors materially affecting the merits of the action, or prejudicial errors, require reversal. The trial court has broad discretion in identifying, valuing, and dividing marital property. In addition, appellate courts will interfere in marital property divisions only where the division is so unduly favorable to one party that it constitutes an abuse of discretion. This Court presumes the property division was correct, and the appellant bears the burden of overcoming the presumption.

10

In reviewing the circuit court's judgment, this Court accepts as true the facts and all reasonable inferences therefrom in the light most favorable to the judgment. This Court disregards all evidence and inferences to the contrary. This Court does not review credibility determinations or resolutions of conflicting evidence.

*Lollar v. Lollar*, 609 S.W.3d 41, 45–46 (Mo. banc 2020) (internal quotations and citations omitted).

## Analysis

### *Point I: Mother's Motion to Reopen Case*

In Mother's first point, she argues that the trial court "erred," "erroneously declar[ed] and appl[ied] the law," and "abus[ed] its discretion in denying Mother's Motion to Reopen Case for New Evidence." Specifically, Mother alleges that "reopening the case would not have been inconvenient for the trial court or given Mother an unfair advantage and could have been outcome determinative[.]" In support, she claims that "the proposed evidence of intentional road rage by Father causing personal injuries and property damage would have been relevant in a child custody determination[,]" "was new evidence and not cumulative," and "was brought to the attention of the trial court as soon as learned by Mother and a decision had not yet been rendered by the trial court."

Mother's motion to reopen the case for the presentation of new evidence was discretionary. "A circuit court has wide discretion in deciding whether to grant a motion to reopen a case for admission of additional evidence, and we will not interfere with that decision unless we find an abuse of discretion." *Baker Team Properties, LLC. v. Wenta*, 611 S.W.3d 348, 354 (Mo.App. W.D. 2020) (internal quotation and citation omitted). "An abuse of discretion occurs only when the trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration." *Id.* (internal quotation and citation omitted). However, it is necessary to

11

observe that both parties inappropriately rely on ***Murphy v. Carron*** for the proposition that in *this case* the judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." 536 S.W.2d 30, 32 (Mo. banc 1976). Rather, as indicated, the abuse-of-discretion standard controls.

In Mother's "Motion to Reopen Case for New Evidence," she in relevant part states:

3. [Mother] has attempted to demonstrate [Father's] proclivity towards drinking, his penchant for domestic violence, his irresponsible and dangerous behavior while parenting, his inability to safely parent the minor children in an unsupervised setting and his continued and intentional refusal to cooperate with people of authority, including but not limited to, the court ordered supervisors, the GAL, court-ordered psychologists and this court.

4. More importantly, [Mother] has tried to prove that [Father's] behavior makes co-parenting impossible, and that his actions towards [Mother], his words towards [Mother], and his behavior while with the minor children demonstrate that [Father] is not fit for unsupervised parenting time with the minor children.

. . . .

10. [Mother] recently learned that on June 7, 2020, [Father] was involved in a road rage incident in Christian County partially captured on video, whereby [Father] used his vehicle to injure and assault three innocent civilians in a vehicle. The three civilians were scared, injured and all three suffered post-accident headaches and pain in their heads and necks after [Father] rammed them in his Dodge Ram 2500 while intoxicated. (*See* [Mother's] exhibit A, attached hereto as the Probable Cause Statement).

11. [Father] was not charged until October 2020, after the parties submitted their evidence to the court. [Mother] could not have learned about this unless [Father] volunteered that he was arrested and booked on June 7, 2020. However, [Father] did not share this information with [Mother] and counsel for [Mother] just learned about this after stumbling upon it accidentally.

12. [Father] is charged with felony property damage and 3 counts of assault. This information, if known on September 30, 2020, would have been crucial information for this court to consider before making a decision about the safety and care of the minor children.

. . . .

12

14.    [Mother] believes this information would be helpful to the court in its decision-making and believes that before the Court makes a final decision that [Mother] should have an opportunity to present evidence concerning [Father's] felony charge, his resistance to the police in the form of resisting arrest, his drinking alcohol and/or using drugs and driving, his assault on three innocent civilians and his leaving the scene of a violent assault and lying to law enforcement about his involvement.[9]

After hearing extensive arguments on Mother's motion, the trial court stated:

THE COURT:  Counsel, I'm going to tell you what I think.  I'm -- I'm going to deny the motion, and I'm going to tell you why.  I think over the last four years of -- of psychological evaluations and everything else that I've heard, I think this is merely going to be cumulative of where I am likely to go on this case.  Now, let me -- let me qualify that by saying that my denial of that motion until I enter a judgment is interlocutory, okay?  I've still got to listen to four CDs of trial testimony, going back over four years, in order to make sure I've not missed anything.  And so until I've done that -- and -- and once I've done that, you know, I may get everybody back on the horn and say, you know, I'm just really up in the air about where to go here, and this -- this might be a tipping point issue, and so I'll -- let's go ahead and delve into it.  I don't think that's going to happen, but it could happen.  And so I'm going to deny the motion for now.

I just don't want to delay my going ahead and -- and, if I grant the motion, then everything is on hold until we can reschedule another date.  And, you know, with continuances and trying to get witnesses in and the COVID and, you know, it's going to be another year, and I don't want to go that route unless we have to.  And I'm not sure we have to yet.  So that's why I'm denying it for now, okay?

[MOTHER'S COUNSEL]:  Yes, sir.

THE COURT:  [Father's Counsel], are you with me?

[FATHER'S COUNSEL]: Yes, sir.

On November 12, 2020, the trial court entered its "Docket Entry and Order[]" denying Mother's motion to reopen the evidence.

The record reflects that—contrary to Mother's argument—the trial court exercised careful and extensive consideration to the evidence and arguments before it.  *See **In re Marriage of***

---

[9] As relevant here, the charges were dismissed by the prosecutor on May 4, 2021.

*Blundon*, 802 S.W.2d 188, 192 (Mo.App. S.D. 1991) (rejecting challenge of trial court's decision not to reopen the evidence to demonstrate that husband was hospitalized for open heart surgery and had expenses uncovered by insurance, where husband's "physical problems and potential need for additional heart surgery were fully developed at trial, hence the evidence tendered by [husband] on his motion to reopen showed nothing the trial court did not already know."); *cf. Soehlke v. Soehlke*, 398 S.W.3d 10, 23 (Mo. banc 2013) ("The trial court did not reject Mother's arguments because they were filed too late; it rejected them because they were unpersuasive.").

Mother's Point I is denied.

### Point II:  Trial Court's Alleged Failure
### to Make Section 452.375 Findings

In her second point, Mother argues that the trial court "erred," "erroneously declar[ed] and appl[ied] the law," and "fail[ed] to make the specific findings of abuse required by section 452.375[.]"  Mother suggests that "the trial court was required under that statutory provision to make specific findings of fact" in light of its finding that "Father had engaged in the verbal domestic abuse of Mother."

Mother's brief indicates that she "did file a timely Motion for New Trial/Motion to Vacate and Set Aside Decree/Motion to Amend in which she raised the issue of the trial court's failure to make these findings . . . , which Motion was denied on March 4, 2021[.]"  Mother claims that reversal and remand is required "so that these findings can be made."

As relevant here, the trial court made the following findings:

> The Court finds there has not been a pattern of domestic violence as defined in §455.010 RSMo.  The Court further finds that while Father did engage in some acts of verbal domestic abuse prior to separation when he was drinking, as testified to by Mother, he never harmed her or the children or threatened to harm her or the children.  The Court further finds that Father was the victim of domestic violence from Mother's [f]ather on one occasion during the marriage.

14

However, the trial court also found that "the only domestic abuse or domestic violence that occurred in a form contemplated by the applicable statutes regarding its effect on custody or visitation rights is the undisputed fact that Father was the victim of domestic violence perpetrated on him by Mother's father during the marriage." The trial court indicated that "[t]here is a statutory requirement under this section stating that custody and visitation rights shall be ordered in a manner that best protects a parent who has been a victim of domestic violence from further harm. This requirement is addressed in the terms of the Court[']s parenting plan."

Mother fails to demonstrate how the purported absence of statutorily designated findings prejudiced the disposition of her case. Even assuming arguendo that there was error, Mother fails to demonstrate prejudice, which was her burden on appeal. *Jones v. Jones*, 536 S.W.3d 383, 385 (Mo.App. S.D. 2018) ("We review for prejudice, not mere error."). We accordingly deny her Point II.

### Point III: Attorney Fees

In her third point, Mother argues that the trial court "erred," "erroneously declar[ed] and appl[ied] the law," and "abus[ed] its discretion in awarding Father an attorney fee of $50,000 from Mother[.]" In support, Mother argues that

> a consideration of all relevant factors as required by Section 452.355 RSMo (2016) did not justify such an attorney fee in that the length and litigious nature of the proceeding was not primarily caused by Mother, the Motion to Reopen Case for New Evidence filed by Mother was not a gross overreaction based on second hand marginal information, there were no billings or time records to establish such a fee and Mother was not responsible for the filings and actions of the Guardian Ad Litem[.]

Section 452.355.1 grants the trial court the authority to award attorney fees in a dissolution action. As relevant here, it designates that the trial court may

> after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of

15

the action, . . . order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415[.]

*Id.*

"The trial court is deemed an expert at fashioning an award of attorneys' fees and may do so at its discretion." ***Barbieri v. Barbieri***, 633 S.W.3d 419, 434 (Mo.App. E.D. 2021) (internal quotation and citation omitted). "We presume the trial court's award of attorney fees is correct, and will reverse the award only upon a showing that the trial court abused its discretion." ***Herschend v. Herschend***, 486 S.W.3d 346, 354 (Mo.App. S.D. 2015). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." ***Berry v. Volkswagen Group of Am., Inc.***, 397 S.W.3d 425, 431 (Mo. banc 2013) (internal quotation and citation omitted). "The burden is a high one as trial courts are considered experts on the necessity, reasonableness, and value of attorney's fees and, as such, can set the amount of attorney's fees award, if any, without the aid of evidence and that the award is presumed correct." ***Merriweather v. Chacon***, 639 S.W.3d 494, 504 (Mo.App. E.D. 2021).

As relevant here, the trial court made the following findings in its judgment:

**Having considered all relevant factors, the Court specifically finds that Mother has the greater ability to pay fees and costs in this case . . . . In addition, the Court finds that the length of these proceedings, the litigious nature and the costs of these proceedings were primarily caused by Mother** with the most recent examples being the November 4, 2020 and November 5, 2020 motions filed by Mother and the GAL to re-open the evidence and to suspend Father's temporary visitation. These motions were filed after the case was tried and deemed submitted. The allegations in the motions and the relief sought, while not filed in bad faith, were unquestionably a gross overreaction based on second hand marginal information.

For these reasons and others, the Court awards Father reasonable attorney fees in the amount of $50,000.00 and Mother is ordered to reimburse Father that amount within 30 days from the date of this Judgment. Mother is ordered not to

16

pay this amount directly to Father.  Mother shall pay this $50,000.00 to Father and
Father[']s attorney through Mother[']s attorney.

(Emphasis added) (internal footnote omitted).

Mother argues that "an examination of the Record on Appeal reveals that all 3 parties
(Mother, Father and the GAL) were more or less equally culpable in the extended nature of the
case."  This argument effectively amounts to a request for this Court to reweigh the evidence,
which we cannot do.  *See Merriweather*, 639 S.W.3d at 501.  The record reflects that the trial court
carefully considered the section 452.355.1 factors, and "[w]e find no reason on the record to second
guess [the trial court's] determination[.]"  *Id.*

Mother fails to demonstrate that the trial court abused its discretion in awarding Father
attorney fees, and her Point III is accordingly denied.

### *Point IV:  Deficiency Judgment Debt*

In her fourth point,[10] Mother argues that the trial court "erred" in "erroneously declaring
and applying the law" and "abusing its discretion" by "allocating the entire actual damages award
portion of the deficiency judgment debt to Mother[.]"  She claims that "a consideration of all
relevant factors as required by Section 452.330 RSMo (2016) did not justify such an allocation in
that the deficiency judgment debt resulted from Father living in the marital home for 2 years
without paying anything towards the debt on which the deficiency judgment debt is based."

The substance of Mother's argument is as follows:

If the testimony of Mother were to be believed, [the] deficiency judgment debt
resulted from Father living in the home for 2 years by himself without making any
payments on the debt . . . .  If so, there does not appear to be any justification for
allocating the entire actual damage portion of the debt (the greater amount) against

---

[10] Mother's brief states that "[t]he standard of review for this Argument IV is the same as that set forth in Argument
III of this Brief, which is hereby realleged and incorporated by reference herein."  Incorporation by reference from
one part of an appellate brief to another is prohibited.  *See Hale v. Burlington Northern & Santa Fe Railway
Company*, 638 S.W.3d 49, 62 (Mo.App. S.D. 2021).

17

Mother, while allocating the entire punitive damage portion of the debt (the lesser amount) against Father.

Mother makes no effort at demonstrating that the trial court credited her testimony in this respect, as was her burden on appeal. *See **Walker v. Walker***, 619 S.W.3d 192, 194 (Mo.App. S.D. 2021). Deprived of an analytical starting point, the remainder of her argument must fail. *See **Mayes v. Mayes***, 941 S.W.2d 37, 39-40 (Mo.App. S.D. 1997) ("Appellant has emphasized the evidence favorable to her and downplayed evidence favorable to the judgment. Such an effort is fruitless."). Moreover, the trial court made a significant number of specific findings (supported by the record) which demonstrate that its allocation of debt from the deficiency judgment on the marital home was not an abuse of discretion:

> In October of 2015, Father and Mother purchased a home. The funds used to purchase the home came from Mother's parents. The home was marital property. Father stayed in the marital home for approximately a year and a half after May 2016. From October 2015 until Father vacated the marital home towards the end of 2017, he paid the insurance and real estate taxes and maintained the property. Prior to May 6, 2016, no payments were made by Father or Mother to her parents for the marital home and no demands were made by her parents to pay[]back any of the money they provided to purchase the marital home. There was no promissory note or deed of trust on the marital home.
>
> After Mother left the marital home, her parents made demand of Father to pay them the money they advanced the parties to purchase the home. They may have asked Father for a quit claim deed. It is unknown if they asked Mother for a quit claim deed. On December 9, 2016, Mother[']s parents filed a multi-count suit (Case # - 16AF-CC01237), against Father and Mother alleging among other things, fraud, unjust enrichment and asking for an imposition of an equitable lien on the marital home. Mother did not oppose any of the relief requested by her parents in that law suit and admitted through counsel the majority of the allegations.
>
> The marital home case was tried before the Honorable Tony Williams (ret.). On December 14, 2017, Judge Williams rendered a judgment against Father and Mother in the amount of $199,389.52 (which included attorneys fees and pre-judgment interest), and a punitive damage award against Father only in the amount of $20,000.00. Judge Williams signed the judgment proposed by the attorney for Mother's parents. That judgment adopted by reference the proposed findings of fact and conclusions of law submitted by the same attorney. After denying Father's authorized post-trial motion for new trial or to amend the judgment, that un-

18

appealed judgment ultimately became final.[11] Mother[']s parents then executed on the equitable lien and sold the marital home. At some point thereafter, they applied the proceeds to the $199,389.52 judgment but never filed anything representing that partial satisfaction.

According to the file in the marital home case, Mother[']s parents have attempted on several occasions to collect the full $199,389.52 judgment against Father while this dissolution was pending. They have not done anything to try and collect from Mother. . . . [T]hey have continued to pay Mother $10,000.00 to $15,000.00 a year from their business and are aware of Mother's savings account of over $107,000.00.

On September 30, 2020, Mother's counsel stated that the outstanding balance of the joint judgment was between $30,000.00 and $35,000.00 plus the $20,000.00 punitive damage award. The record was left open for Mother's counsel to provide an accurate balance on this debt but nothing further was ever provided to the Court.

The Court finds the debt owed to Mother[']s parents is a marital debt because it was incurred during the marriage and prior to the interlocutory judgment rendered by Judge Luna on January 31, 2018. The Court finds that the total balance of this marital debt is $50,000.00 as of the date of this judgment, exclusive of interest.

(Footnote omitted).

Mother fails to demonstrate that this ruling "is clearly against the logic of the circumstances before the court at the time and is so unreasonable that it shocks one's sense of justice and indicates a lack of careful consideration." *Baker Team*, 611 S.W.3d at 354 (internal quotation and citation omitted). Mother's Point IV is accordingly denied.

---

[11] As relevant here, the trial court made the following additional findings:

There is no principle of law better settled than the rule that a bad final judgment is just as final as a good final judgment. Whether or not one agrees with the judgment rendered by Judge Williams, there is no doubt that it is a final judgment and it is also a marital debt. It is the duty of this Court to divide this marital debt in such proportions as the court deems just after considering all relevant factors, including but not limited to the statutory factors set forth in §452.330 RSMo.

19

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

JACK A. L. GOODMAN, J. - CONCURS